Larry L. Debus, #002037
Tracey Westerhausen, #010518
Debus, Kazan & Westerhausen, Ltd.
335 East Palm Lane
Phoenix, AZ 85004
Telephone: (602) 257-8900
Facsimile: (602) 257-0723
E-Mail: lld@dkwlawyers.com
**Attorneys for Defendant Lawler**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America, | ) | |
|---|---|---|
| | ) | Case No. 10-CR-00796-NVW |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **Defense Sentencing Memorandum** |
| JaimeLee Lawler, | ) | |
| | ) | |
| Defendant | ) | |

The attorneys for Jaimelee Lawler ask the Court to sentence her to less than the maximum capped by the plea agreement. The reasons follow.

**1.    The Toma Report.** The defense filed under seal a report by John J. Toma, Ph.D. That evaluation may well be the first time that Ms. Lawler comprehensively delved into and admitted her social and mental difficulties, because her background makes it her have "difficulty disclosing information."[1]

The report portrays Ms. Lawyer as a tormented and abused person, one who suffers from alcohol dependence, PTSD, and abandonment.[2]  Contrary to the suggestion by the government, she is not diagnosed with an antisocial personality disorder or sociopathy.[3]

Understanding that Ms. Lawler's childhood experiences "affect(ed) the development

---

[1] Report at 2.

[2] Report at 16, 19.

[3] United States' Sentencing Memorandum at 13-14 and n. 4.

of good moral reasoning skills,"[4] isn't helpful to the sentencing process unless it will lead to rehabilitation. Dr. Toma concludes, "It is unlikely that with adequate treatment for her psychological symptoms and adequate earlier intervention that we would be seeing Ms. Lawler at this time."[5] His recommendation, could they be implemented, would allow society to benefit from Ms. Lawler's constructive, versus destructive, efforts in the future.

**2. Letters of Support.** The written comments from Ms. Lawler's support group also underscore that she is no sociopath. She is well-known for her kindness and generosity to them, their kids, and even to animals.[6]

**3. Role in the Offense.** The government's memorandum sites alleged special skills for a two point enhancement.[7] "Special skill" means "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts."[8] Applying the two-part test of *United States v. Lee*,[9] the Court must first determine whether the skill is possessed by members of the general public. Second, it must determine whether the skill requires substantial training, education or licensing, and is analogous to the skills described in the application note.

In the instant matter, the administrative and clerical tasks of completing a mortgage packet hardly rise to the level of a demolition expert. No special license is required of a

---

[4] Report at 21.

[5] Report at 24.

[6] Notice of Filing of Letters of Support (filed 3/5/12).

[7] "If the defendant . . . used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. § 3B1.3.

[8] Application Note 4.

[9] *United States v. Lee,* 296 F.3d 792, 798 (9th Cir. 2002).

mortgage officer, although a mortgage broker must have one.[10] Even adding straw buyers to her own bank accounts was hardly the stuff of the special expertise that this guideline requires.

The Court should also decline to apply the leadership aggravator, under Guideline § 3B1.1.c.[11] Ms. Lawler had a few strawbuyers who came into the scheme by knowing her, but her work was largely clerical. The additional four levels should not apply here.

**4.  The Architects of Countrywide's Scam have Escaped Incarceration.** The Justice Department dropped its criminal investigation of Countrywide executives, but the Securities and Exchange Commission went after them civilly. Former CEO Angelo Mozilo was able to buy his way out of his legal troubles by paying the largest financial penalty ever against an executive, $22.5 million. Ironically, this is the amount of loss that the government attributes to Ms. Lawler, who is just one of hundreds of employees swept up in mortgage fraud investigations. Mr. Mozilo profited hugely from Countrywide, but had to return only the same amount the government attributes to Ms. Lawler. This just smells, and fails to deter the architects of fraudulent schemes.[12]

**5.  Countrywide Contributed to its Own Losses.** Co-defendant Brett Matheson filed a Request for Downward Departures, based on §5K2.10 provides in pertinent part: "If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense." While normally this guideline doesn't apply to financial crimes, there may be "unusual circumstances in which substantial victim misconduct would warrant a reduced penalty in the case of a non-violence offence."

---

[10] A.R.S. § 6-903.

[11] This guideline enhances the offense level by 4 points, "If the defendant was an organizer or leader of a criminal activity the involved five or more participants or was otherwise extensive."

[12] S.E.C. News Releases, Exhibit A.

For the Court's convenience, a copy of the Matheson motion is attached.[13] Sure, Ms. Lawler entered the seamy world Countrywide created. But it, as the creator of that world, is hardly a typical victim. The Court should invoke this guideline in determining Ms. Lawler's sentence.

**6.     Jennifer Seller's Treatment Should be Akin to Ms. Lawler's.** In CR-07-544-03 PHX-ROS, real estate agent Jennifer Sellers was charged with mortgage fraud. She entered into a plea agreement with a cap of 5 years. According to the plea agreement, she entered into no less than 19 transactions. (This case is listed in Exhibit E to the government's sentencing memorandum.) She received no §5K1.1 departure. Her sentence was 24 months.

Ms. Lawler's cap is twice that of Ms. Sellers, yet they appear on the face to be similarly situated. This is yet another reason that the Court should impose less than the maximum allowed under the plea agreement.

**7.     Substantial Assistance under §5K1.1.5.** Because Ms. Lawler entered into a plea agreement, she spared the government the time, expense and energy of preparing for trial and trying the case. The government has agreed to a departure under this guideline.

Finally, the defense agrees with Section II of the government's sentencing memorandum regarding the advisory nature of the guidelines and 18 U.S.C. § 3553.a. It requests that it be treated as though incorporated herein.

**RESPECTFULLY SUBMITTED** this 6th day of March 2012.

        DEBUS,  KAZAN & WESTERHAUSEN, LTD.

        By     s/ Tracey Westerhausen
             Tracey Westerhausen
             Attorneys for Defendant

---

[13] Exhibit B.

CERTIFICATE OF SERVICE

I hereby certify that on 6th day of March 2012, I electronically transmitted the attached document to the Clerk's Office using ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kevin M. Rapp
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Kevin.Rapp@usdoj.gov

Monica B. Klapper
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Monica.Klapper@usdoj.gov

Charles W. Galbraith
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, AZ 85004
charles.galbraith@usdoj.gov

By      /s/ Desiree Ellis